EUGENE M. TRAVIS, as Comptroller of the State of New York, Plaintiff, *v.* THE ANN ARBOR COMPANY, Defendant.

Third Department, December 28, 1917.

**Tax — transfer tax upon cancellation and surrender of stock certificates, although beneficial interest of owner not transferred.**

Upon the cancellation and surrender of a stock certificate standing in the name of an accommodation holder and the making out of a new stock certificate in the place thereof in the name of another accommodation holder, and the indorsement of the new certificate in blank by him, the actual beneficial ownership of the stock remaining at all times in another, two transfers of the legal title to the stock are effected, taxable under section 270 of the Tax Law.

KELLOGG, P. J., dissented in memorandum.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Merton E. Lewis, Attorney-General [C. T. Dawes, Deputy Attorney-General,* of counsel], for the plaintiff.

*Curtis, Mallet-Prevost & Colt [Hugo Kohlmann* of counsel], for the defendant.

LYON, J.:

The question submitted is whether stock transfer taxes accrue upon the cancellation and surrender of a stock certifi-

cate standing in the name of an accommodation holder and the making out of a new stock certificate in the place thereof in the name of another accommodation holder, and the indorsement of the new certificate in blank by him, the actual ownership of the stock remaining at all times in the defendant.

In January, 1911, the defendant became the owner of 50,910 shares of the capital stock of the Ann Arbor Railroad Company, the stock certificate having been issued in the name of Joseph Ramsey, Jr., by whom it had been indorsed in blank and in whose name it was allowed to stand after its purchase by the defendant, he having become one of its directors. Said Ramsey having removed from the vicinity of the city of New York to the State of Ohio, the defendant directed the Empire Trust Company of New York, which was then and still is the transfer agent of the stock of said railroad company as well as of the stock of the defendant, to cancel the said certificate and to issue a new certificate in the name of Hugh H. Harrison, a director of the defendant. This the trust company did November 27, 1912, and said Harrison thereupon went to the office of the trust company and there indorsed the new certificate in blank and left it with the trust company where it has since remained subject to the order of the defendant. Said Harrison gave no consideration for said certificate, never assumed to exercise any rights over it except as directed by the board of directors of the defendant, and there has been no change in the beneficial ownership of the shares represented by the certificate since the title thereto was acquired by the defendant in January, 1911. No stock transfer tax has been paid in connection with the transactions of November twenty-seventh, which the plaintiff claims constituted two taxable transactions within the meaning of section 270 of the Tax Law. This the defendant denies. The parties have stipulated that if any tax is payable it is the sum of $1,018.20 upon each transfer, with interest thereon from the time the transfer was made, and that the same is payable by the defendant to the plaintiff.

Section 270 of the Tax Law as it existed November 27, 1912 (Consol. Laws, chap. 60, as amd. by Laws of 1911, chap. 352, and Laws of 1912, chap. 292), provided, so far

as is material to this controversy: " There is hereby imposed and shall immediately accrue and be collected a tax, as herein' provided, on all sales, or agreements to sell, or memoranda of sales of stock, and upon any and all deliveries or transfers of shares or certificates of stock * * * whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of sale or transfer, whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to said stock, or merely with the possession or use thereof for any purpose, * * * on each hundred dollars of face value or fraction thereof, two cents. * * *." While the beneficial interest of the defendant in the stock was not transferred, the legal title to the stock was twice transferred. It was held by this court in *Bonbright* v. *State of New York* (165 App. Div. 640)'that the expression " legal title," as used in this statute, signified the appearance of title as distinguished from a full and complete title. When the defendant caused the certificate of stock owned by it to be canceled and a new certificate of stock to be issued in the name of Harrison, it thereby caused the legal title to the stock to be transferred to him; and when Harrison indorsed the certificate of stock in blank and left it with the trust company for the defendant, he transferred the legal title to the stock to whomsoever might be the holder thereof. Hence there accrued two taxable transfers. The application of any other rule would be opposed to the plain wording of the statute, and furnish in many cases an easy method of evasion of the tax. The transfers having been made at the request of the defendant, we may assume that the defendant was benefited thereby. A tax should be paid upon each transfer.

Judgment is, therefore, directed in favor of the plaintiff against the defendant for the sum of $2,036.40, with interest from November 27, 1912.

All concurred, except KELLOGG, P. J., dissenting in memorandum.

KELLOGG, P. J. (dissenting):

The alleged transfers did not result in " investing the holder with the beneficial interest in or legal title to said stock, or merely with the possession or use`thereof for any purpose," as contemplated by the statute imposing the tax. The certificates were formerly registered in the name of Ramsey. Upon his leaving the company, the board of directors directed the transfer agent, the Empire Trust Company, to issue new certificates in the name of Harrison. The certificates were issued by the trust company but remained in its possession. Harrison went to its office, indorsed the certificates in blank and left them there at the direction of the defendant company in which he was an officer. He never had the possession, control, use of or title to the certificates at any time, but at all times the certificates were the property of the defendant and in its possession and control.

I favor an affirmance.

Judgment directed in favor of the plaintiff for $2,036.40, with interest from November 27, 1912.